Mary C. Geddes
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>vs.<br><br>SALMA SOSA,<br><br>                    Defendant. | Case No. 3:02-cr-0103-HRH-JDR<br><br>**PREDISPOSITION MEMORANDUM** |

**Background**

       This is Salma Sosa's first appearance before the court since 2003, when she was sentenced. A first-time offender (and drug user) in a 43-person drug distribution conspiracy, sentenced under the mandatory sentencing guideline regime, Salma Sosa received a term of 37 months' incarceration and five years' supervised release. (Her husband was also convicted and sentenced for the same conspiracy.)  Ms. Sosa commenced supervised release in June 2005.

       Ms. Sosa does not contest the allegations that she violated her supervised release. She asks that this court impose a time-served disposition.  In the disposition hearing, she proposes to telephonically call Doug White, her counselor at the Men's and Women's Center, as a witness. Mr. White had been contracted by the Probation Office to provide Ms. Sosa with counseling.  Her

husband, Tomas Moquet, will also be available to testify regarding Ms. Sosa's efforts at rehabilitation.

**Ms. Sosa's Work and Family Situation**

During last four years of supervision, Ms. Sosa has worked hard to take care of her family. She has been working steadily in her occupation as a licensed hairdresser. (In order to be licensed by the State of Alaska, hairdressers have to have either 1,650 hours of training in an approved school or 2,000 hours of training as an apprentice.) Ms. Sosa is required to biennially renew her license.

After her release from incarceration, Ms. Sosa worked at Helena's Hair Design and Supply in the Dimond Center. She worked there for 3½ years. At Helena's, she was required to split her earnings on a 60-40 basis (with 40% going for the overhead). Recently, 2½ months ago, Ms. Sosa undertook a substantial monthly financial obligation in order to improve her net earnings. Now she rents a "chair" at The Loft, which is located near the Lake Otis and Abbott intersection. Renting a chair costs $1,000 per month, and she has to pay in advance. In addition to paying for the chair, Ms. Sosa also pays for beauty supplies, costing an additional $240 to $480 a month. However, now, Ms. Sosa is able to gross between $1,200 and $1,400 during each week that she works, so this represents a net gain in her income.

In addition to the responsibilities of having a small business and establishing and maintaining a satisfied clientele, Ms. Sosa has other, even more important ones at home. She and her husband have an 11-year-old daughter who attends an elementary school in Anchorage. Because her husband works three jobs, Ms. Sosa is the parent who shoulders more responsibility for her daughter's care. And their family is growing. Ms. Sosa and her husband learned only this week

(while she was incarcerated) that she is one month pregnant. This wholly unexpected news has strengthened the couple's commitment to working on their marriage.

The couple does own their home. But they have been struggling to keep up with payments. They are currently behind two months. They refinanced a year ago and are now seeking a loan modification so that they do not lose the property. Frankly, the family's ability to maintain their family home depends on Ms. Sosa's continued employment. Her husband's multiple jobs do not pay well, and Ms. Sosa's income is crucial to maintaining the family home.

**Ms. Sosa's Struggles With Depression and Abstinence**

During her incarceration, Ms. Sosa successfully completed the 500-hour drug program offered by the Bureau of Prisons. Ms. Sosa then spent the six months at Cordova Center while she participated in and completed out-patient treatment at Clitheroe. Ms. Sosa began her term of supervised release on June 6, 2005.

For whatever reasons, Ms. Sosa has struggled mightily with depression during her supervised release. There are any number of possible contributing causes: a rocky marriage; financial challenges; seasonal affective disorder during winter months; and an extended separation from her family in the Dominican Republic due to her incarceration and status on supervised release. In July 2006, Ms. Sosa requested mental health treatment. In the fall of 2007, Ms. Sosa attempted to commit suicide by taking 25 sleeping pills. The Probation Office has been responsive to Ms. Sosa's requests for treatment. Off and on during the last two years, Ms. Sosa has been in counseling with Doug White of the Men's and Women's Center, who contracts with the Probation Office.

Ms. Sosa has been subject to *weekly* drug screening during most of her term of supervised release, which began in June 2005, after several months of drug-free residency in

Cordova Center. Almost all of her drug screens have been clean for drug use. Ms. Sosa had no dirty UAs in 2005 and in 2008.

However, despite her graduation from RDAP and treatment at Clitheroe, she has had relapses. She had two positive urine tests in 2006, two admitted instances of drug use in 2007, and, in 2009, four admitted instances.

Ms. Sosa – and her husband – are adamant that her drug use is truly occasional and has occurred only in the context of her drinking at bars. Ms. Sosa goes to the bars because she loves dancing. A Dominican immigrant, she finds, in dancing, a connection to her culture and personal history, and an unqualified source of joy which can be a counterbalance to the depression which challenges her. While recognizing that she needs to continue in drug treatment, Ms. Sosa has sought out healthier alternatives to bar-going. She has taken a dance class. She exercises regularly at a gym. And she is trying to form new friendships by connecting with other parents.

**Her Counselor's Observations**

Ms. Sosa's counselor, Doug White, is available to testify at Ms. Sosa's disposition hearing. He notes that Ms. Sosa does not engage in drug use as a lifestyle, and he believeses that her use seems to be truly occasional. He notes that Ms. Sosa functions well in society, for the most part. She does not drive when she has been drinking. She works hard, is a good mom, keeps a clean house, seeks to take care of herself physically and mentally by regularly exercising, and has been making substantial efforts at changing her social networks.

All of that being said, Mr. White states that Ms. Sosa may always be at risk of relapse, and that her struggles with depression and SAD may also continue. Mr. White says that some patients are able to successfully combat the cycles of stress and depression with anti-anxiety and anti-depressive medications, but those medications have thus far disagreed with Ms. Sosa.

*United States v. Salma Sosa*
Case No. 3:02-cr-0103-HRH-JDR                                        Page 4
Case 3:02-cr-00103-HRH     Document 1396     Filed 11/02/09     Page 4 of 6

**Ms. Sosa's Proposal for Disposition**

Ms. Sosa recognizes that, at this point, the court is required to revoke her supervised release and impose some imprisonment under 18 U.S.C. § 3583(g)(4). However, in light of her situation, she humbly asks the court to limit her term of incarceration to a time-served disposition. (Ms. Sosa has been in custody since October 27, 2009.) She also asks that the court NOT continue her on supervised release.

Since June 2005, Ms. Sosa has been making substantial efforts to comply with the conditions of federal supervision. And she has voluntarily submitted to significant sanctions when she has relapsed. As consequences for past dirty UAs, she spent sixty days in Cordova Center and nine months (aggregately) in home confinement on electronic monitoring, and has returned to out-patient treatment. Although she recognizes that her relapses to drug use this year may suggest a different response, she nevertheless asks that the court consider that she has met many of the challenges of re-entry. She has an impressive job skill, and apparently has created a good clientele who appreciates her skills. She is a capable, caring parent. These are characteristics which are crucial for success in life after prison and felony conviction. Ms. Sosa does not deny that she still needs help, and more drug treatment, but she proposes to obtain that on her own.

If the court is not at all inclined to end Ms. Sosa's supervision, she proposes an alternative to incarceration. Ms. Sosa would comply with home confinement and electronic monitoring requirements through the end of her supervised release term (next June, 2010). She also agrees to return to out-patient drug treatment.

Home confinement for seven months is a significant additional sanction for anyone. But it has also been, in the past, a demonstrably effective means of keeping Ms. Sosa away from the bars and the temptation of using drugs in that context. Additionally, home confinement rather than

additional prison time will allow Ms. Sosa to continue working and supporting her family. Her rehabilitation and her mental health will not be advanced if her family loses their home and the parenting she alone provides when her husband is working. Residential drug treatment is not indicated, for the same reasons.

DATED this 2nd day of November, 2009.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA

/s/ Mary C. Geddes
Assistant Federal Defender
Alaska Bar No. 8511157
601 West 5th Avenue, Suite 800
Anchorage, AK 99501
Ph: (907) 646-3400
Fax: (907) 646-3480
mary_geddes@fd.org

Certification:

I certify that on November 2, 2009, a copy of the foregoing document, with attachments, was served electronically on:

Thomas C. Bradley, Esq.

/s/ Mary C. Geddes